J. F. Suit, R. C. Gregory, and R. Jones, for the plaintiff.

---

COLLINS, Secretary of State v. THE STATE on the relation of MORRISON, Attorney General.

The act of 1855 creating the office of Attorney General, vested the appointment of that officer, for the first term, in the General Assembly.

The failure of the Assembly to exercise their power, did not vest that power elsewhere.

The vacancy in the office of Attorney General happened on the taking effect of the act creating the office; and as the act took effect from and after its passage, such vacancy did not happen during a recess of the General Assembly.

The appointment might have been made at any session convened by the executive before the *October* election of 1856.

The Secretary of State is not merely the secretary of the Governor, sustaining towards him the relation of agent to principal: his office was created by the constitution, and he is sworn to support it; and the power of the Governor over him is limited and defined by that instrument.

APPEAL from the *Marion* Circuit Court.

GOOKINS, J.—At the *May* term, 1855, of the *Marion* Circuit Court, *James Morrison,* in his own proper person, and as Attorney General for the State of *Indiana,* presented a petition to said Court, setting forth that on the 5th day of *March,* then last past, he had been appointed and commissioned by the Governor, as Attorney General, by a commission of that date under the great seal of the State, attested by *Erasmus B. Collins,* Secretary of State; that on the following day, he presented his official bond with sufficient sureties, to the Secretary of State, at his office, and offered to take the oath of office before him, as required by law; that the Secretary refused to approve the bond, and administer the oath of office, on the sole ground that the Governor had no right to make such appointment.

An alternative mandate was issued to the Secretary, to which he answered, that the General Assembly which enacted the statute creating the office of Attorney General, continued in session from the 4th day of *January,* 1855, until the 5th day of *March,* inclusive; that on the 5th day of *March,* the Governor of the State filed in his office an order commanding him to issue to *Isaac Blackford* a commission as Attorney General; that he, protesting against the power of the Governor to make such appointment, issued a commission to said *Blackford,* for said office, which was signed by the Governor,

*Thursday,
December* 11.

and attested by him officially, and placed it in the post office, addressed to said *Blackford;* that afterwards, and after the adjournment of the General Assembly, the Governor took said commission from the post office, and without his knowledge or consent, erased the name of said *Blackford* therefrom, and inserted that of the relator, and delivered it to him—which is the same commission mentioned in the writ of mandate; that the Governor did not at any time file in his office any appointment of said *Morrison* to said office of Attorney General, nor any order to issue a commission to him as such; that said *Morrison* was never elected to said office, by joint ballot of the General Assembly; that at the time of placing said commission in the post office, said *Blackford* resided in the city of *Indianapolis;* that he (the Secretary) had no notice that *Blackford* had resigned said office, or declined said commission, or assented to any change therein, and that he was not informed in any manner, until after the issuing of the mandate, that said *Blackford* declined the office; for which reasons, and because the Governor had no power under the constitution and laws to make such appointment, the said commission was void. The order referred to is made an exhibit and is as follows:

"Executive Department, *Indiana, Indianapolis, March* 5th, 1855. The Secretary of State will issue a commission to Hon. *Isaac Blackford,* as Attorney General for the State of *Indiana,* to serve as such for the period of two years, or until his successor is elected and qualified. Mail to him at this place. *Joseph A. Wright.*"

The reply admits the making out of the commission to *Blackford,* and states that it was deposited in the post office by *Strange,* deputy Secretary of State, whence it was withdrawn by said *Strange,* by direction of the Governor; and that the erasure of the name of *Blackford,* and the insertion of that of the relator, was with *Blackford's* consent and approval; and that the only reason assigned by the defendant for his refusal to approve the bond and administer the oath of office, was

that he did not admit the right of the Governor to make the appointment.

On the hearing of the cause, the Governor testified that after he sent the order to the office of the Secretary of State for the appointment of Judge *Blackford*, he had a conversation with that gentleman, and thereupon he concluded to have the commission issued to Mr. *Morrison*; that he went to the Secretary's office and was told by the deputy that the commission had been sent to the post office. He directed *Strange* to take it from the post office, which he did, and brought it to the Governor's house, where *Strange*, by his direction, erased the name of *Blackford*, and inserted that of *Morrison*; that *Blackford* never had the commission; that he consented to these acts before they were done; and that they were done on the 5th day of *March*, after the General Assembly had adjourned *sine die*; that *Collins* was not present; that he directed *Strange* to make a corresponding alteration in the order for issuing the commission. The plaintiff also gave in evidence the commission, and the official bond which he had tendered.

*Strange* testified that the order for the appointment of *Blackford* was the only one filed in the Secretary's office, by the Governor; that without the knowledge of *Collins*, he withdrew the commission from the post office, and carried it to the Governor's house, erased *Blackford's* name and inserted *Morrison's*—all which he did under the Governor's directions; and that he understood him to direct a corresponding alteration to be made in the record of commissions in the Secretary's office, which he promised to do. Governor *Wright* being recalled, said he had no doubt his request related to the order, and not to the record of commissions, and that until then he supposed the alteration had been made according to his request.

This being all the evidence, the Circuit Court found for the relator, overruled a motion for a new trial, and awarded a peremptory mandate, requiring the Secretary

to approve the bond and administer the oath of office—from which order the Secretary appeals.

The act creating the office of Attorney General, (Laws of 1855, p. 16), was approved *February* 21, 1855. The first section is as follows:

"*Be it enacted*, &c., That there be elected by joint ballot of both houses of the present General Assembly, an Attorney General of the State of *Indiana*, who shall hold his office for and during the term of two years after his election."

The second section provides that at the general election in *October* next preceding the expiration of the first term of said office, and every two years thereafter, such officer shall be elected by the qualified voters of the State, according to law. The third section requires that he be commissioned by the Governor, and that he file his official bond in the office of the Secretary of State, to be approved by that officer, and take an oath of office to be administered by him. The fourth, fifth, and sixth sections point out his duties. The seventh fixes the amount of his annual salary. The eighth is as follows:

"As it is contemplated by the provisions of this act to elect an Attorney General at the present session of the General Assembly, an emergency for the immediate taking effect of this act is hereby declared to exist, and the same shall be in force from and after its passage."

Such is the entire act.

Section 18, of article 5, of the constitution, is as follows:

"When, during the recess of the General Assembly, a vacancy shall happen in any office, the appointment to which is vested in the General Assembly; or when, at any time, a vacancy shall have occurred in any other State office, or in the office of judge of any court, the Governor shall fill such vacancy by appointment, which shall expire when a successor shall have been elected and qualified."

The appellant insists that the act in question vested the appointment of Attorney General, for the first term

at least, in the General Assembly; that the vacancy did not happen in the recess of that body, and, therefore, that the Governor had no power to appoint.

The position of the appellee is, that the term "vested," used in the constitution, relates to those offices only which are either by the constitution or by law, given exclusively to that body; and that as this was an elective office, it falls within the last clause of the section, which would give the appointing power to the Governor, without reference to the time when the vacancy may have occurred; and further, admitting that the appointment was vested in the General Assembly, that the vacancy did in fact occur during a recess of that body.

It seems to us very clear that the appointment for the first term was vested in the General Assembly. The language of the act does not seem capable of any other construction. It is—"There shall be elected by joint ballot of both houses of the present General Assembly, an Attorney General, who shall hold his office for and during the term of two years after his election." The appellee insists that the present session is here intended, and that if that is not clearly shown by the first section, the language of the eighth is conclusive. We have no doubt the legislature intended, when they passed the act, to elect an Attorney General during that session; nor have we any doubt that, having failed to do so, they might have elected one at any session convened by the executive before the *October* election of this year.

But if the appellee's premises were admitted, and if they could only have elected during the present session, his conclusion does not follow. By no part of the act was any power given to the people to elect an Attorney General before *October*, 1856, until which time the appointing power was vested exclusively in the General Assembly. That they failed to exercise it, did not vest the power elsewhere; or, admitting that the constitution and the act are to be construed together—not unless the vacancy should occur during a recess. It was not, therefore, "any other State office"—that is, other than those the

appointment of which was vested in the General Assembly—in which a vacancy occurred by their failure to elect. This view is strengthened, if language so explicit can be strengthened, by the consideration that, if the appellee's position be correct, the Governor might have appointed immediately on the approval of the act, without waiting for the legislature to elect; for if it be any office other than one the appointment of which is vested in the General Assembly, the Governor may appoint at any time, as well during the session as in a recess.

The appointment being vested in the General Assembly, the question arises,—Did the vacancy happen during a recess of that body? We think it did not. The act, which was approved *February* 21, took effect from its passage; and the General Assembly adjourned on the 5th of *March*. The vacancy happened as soon as the office was created. There is no difference between this case and that of vacancies in the office of senator in Congress. Const. U. S. art. 1, s. 3. In the case of Mr. *Phelps*, appointed by the Governor of *Vermont* to fill a vacancy which happened while the legislature of that State was in session, the Senate decided that the appointment was without authority; and the office of one senator from this State is now vacant, because the same session of the General Assembly which created the office of Attorney General, continued until the 5th of *March*; and the term of the incumbent expired on the third.

The executive power of appointment would have been as clear in the one case as in the other. In the case of *Stocking* v. *The State*, 7 Ind. R. 326, we put à construction upon this provision of the constitution. The office of Circuit Judge is elective by the people. The legislature having formed another circuit, the Hon. *John Pettit* was appointed by the Governor, Judge of the new circuit until a general election. *Stocking* having been tried before Judge *Pettit*, and convicted of murder, appealed to this Court, and insisted that a vacancy could not occur within the meaning of the constitution, until there had

been an incumbent; but we held otherwise, and the conviction was sustained.

It has been suggested that it did not devolve upon the Secretary of State to overrule the action of the Governor; that that officer having issued the commission, it was the duty of the Secretary to administer the oath of office, and approve his bond. It is not perceived upon what ground this argument can rest, unless it be that the Secretary of State is merely secretary to the Governor, occupying the relation to him of an agent to his principal. This is not the case. The office of Secretary of State is created by the constitution, and the incumbent is sworn to support it. The power of the Governor over the subject is defined and limited by that instrument. The Secretary did not institute this proceeding to annul an act of the Governor; the action comes from the other quarter. It is an attempt to compel the Secretary to do an act which he is not bound to do. Having come to the conclusion that the act of the Governor was void, the plaintiff cannot maintain an action to compel the Secretary to do a further act which would have been of no force had it been done.

*Per Curiam.*—The judgment of the Circuit Court is reversed at the cost of the relator. Cause remanded with instructions to the Circuit Court to dismiss the suit.

Davison, J., dissented.

*D. M'Donald* and *E. Dumont*, for the appellant (1).

*J. Morrison*, for the State (2).

(1) Counsel for the appellant cited 1 Chit. Pl. 215; 1 Stark. Ev. 400, and notes; *Marbury* v. *Madison*, 1 Cranch. 137; *Lockington* v. *Smith*, Pet. C. C. 466.

(2) The relator, in person, cited 1 Black. Com. Wend. ed. 60; *Thomas* v. *Crossin*, Am. Law Reg. for *February*, 1855, p. 213; 2 Story's Com. on the Const. s. 1559; 1 Kent, 228; 1 Greenl. Ev. 6; *Id.* 628; 3 Denio, 381; 3 Wend. 138.