## STATE EX REL. RICHARDSON v. HENDERSON.

OFFICE — VACANCY — STATE EXAMINER — APPOINTMENT BY GOVERNOR—FAILURE OF SENATE TO ACT ON NOMINATION.

1. An office cannot be said to be vacant while any person is authorized to act in it, and does so act. A vacancy exists in an office only where there is no lawful incumbent occupying it.

2. The power of the executive and judicial departments is a grant, not a limitation, while the powers of the legislative department are absolute, except as restricted and limited by the constitution.

3. The power lodged with the governor to fill vacancies is not plenary, but is restricted to cases where the constitution and statutes are silent as to the mode of filling them. (Const., Art. 4, Sec. 7.)

4. Where a constitutional or statutory provision exists, permitting or commanding an incumbent of an office to continue in the discharge of his duties until his successor is qualified, the expiration of the official term cannot be deemed a vacancy, unless there is some legal successor appointed or elected to take the place of the incumbent.

5. Sec. 16 of Article 6 of the Constitution, concerning the continued exercise of his duties by one holding a civil office until his successor is qualified, is applicable to appointive as well as elective offices, and applies to one holding the office of State examiner under executive appointment to fill a vacancy until the next meeting of the legislature.

6. The failure of the Senate at the legislative session, following such appointment, to act upon the nomination of the governor of another person to said office, did not authorize the governor, after the adjournment of the legislature, to appoint to said office, as there was no vacancy therein; and an original appointment to such office is required, by law, to be made by the appointment of the governor, by and with the advice and consent of the senate.

7. The person first appointed, as aforesaid, to fill the vacancy until the next meeting of the legislature, was holding a civil office under the state, and was entitled to exercise its duties until his successor is qualified.

8.  The purpose of the statute in limiting the tenure of office
of such appointee, until the assembling of the legislature,
was to have the office, not the vacancy, filled by the gov-
ernor and senate.  If such latter appointment had been
made, it would not have been for the unexpired term of the
one whose resignation first created the vacancy, but would
have been for the full term; there being no provision to the
contrary.

[Decided Jan. 16, 1894.]

This was an original proceeding in the nature of quo war-
ranto, on the relation of Warren Richardson to oust the re-
spondent, Harry B. Henderson, from the office of state ex-
aminer, and to have relator declared entitled to said office.
The facts are fully stated in the opinion.

*W. R. Stoll,* for relator.

Section 6 of Chapter 84, Laws 1890-1891, authorized the
appointment of relator.  Henderson was appointed under a
restrictive provision as to his time.  The true rule is that one
holding an office, the incumbent of which is by its tenure
to be annually or periodically appointed or elected, and with
no restrictive provision as to the term, may hold over until
his successor is elected and qualified.  Henderson may be a
de facto officer, but is not a "legal incumbent" of the office.
His occupancy is not such as to preclude a vacancy such as
the governor is authorized to fill.  An office is legally vacant
unless the occupant has an unexpired right or title founded
in the constitution or law.  (State v. Murphy, 32 Fla., 138;
State v. Boucher, 3 N. D., 389.)

*Robert W. Breckons* and *Lacey & Van Devanter,* for de-
fendant.

Stone, who was nominated to the senate, and was not con-
firmed, never qualified, and could not resign.  (Miller v.
County, 25 Cal., 94.)  His appointment was void.  One can-
not resign an office to which he is not entitled.  (In re Corliss,
11 R. I., 638; Queen v. Blizard, 2 Q. B., 55; Throop on Pub.
Off., 413; Mecham on Pub. Off., 410.)  The governor could

not appoint the relator in pursuance of Sec. 7, Art. 4, of the Const. as the statutes prescribe a method of filling the vacancy. (Sec. 6, Chap. 84.) The respondent was authorized, as holding a civil office, to exercise the duties of the office until his successor should be duly qualified. (Const., Art. 6, Sec. 16.) The office was not vacant (Mecham, 126-129; Throop,. 431; People v. Edwards, 93 Cal., 153; State v. Howe, 25 O. St., 599; People v. Tilton, 37 Cal., 614; People v. Bissell, 49 id., 408; People v. Tyrell, 87 id., 475; People v. Osborne, 7 Colo., 608; State v. Harrison, 113 Ind., 234; Crassman v. State, 106 id., 203; Kimberlain v. State, 29 N. E., 773; State v. Rareshide, 32 La. Ann., 934; People v. Hardy, 8 Utah, 68; Brady v. Howe, 50 Miss., 607; Smoot v. Summerville, 59 Md., 84; State v. Lusk, 18 Mo., 333; Commonwealth v. Hauly, 9 Pa. St., 513; Lawrence v. Hauly, 47 N. W., 753; State v. Davis, 45 N. J. L., 390; Borton v. Buck, 8 Kan., 302; Tappan v. Gray, 9 Paige, 507; State v. Bryson, 44 O. St. 457.

GROESBECK, CHIEF JUSTICE.

This proceeding is instituted in this court to determine the title to the office of State examiner, and the cause is submitted on an agreed statement of facts, the original jurisdiction of this court under the constitution in quo warranto as to state officers being invoked.

The relator and respondent have each all the legal qualifications required of an incumbent of the office. Shortly previous to the 20th day of December, 1892, Joel Ware Foster was the duly appointed, constituted, qualified and acting State examiner, and had resigned the office and ceased to exercise its duties. On that day Amos W. Barber, then the acting governor of the State, executed and delivered to Harry B. Henderson a commission to fill the vacancy in said office occasioned by the resignation of said Foster, to hold the office until the next meeting of the Legislature of the State, and under such appointment and commission said Henderson, duly and regularly qualified as such officer, and has discharged the duties of said office ever since, and has received and used the emoluments pertaining thereto. The next ses-

sion of the Legislature occurring after the appointment of the defendant, convened January 10, 1893, and adjourned sine die February 18, 1893, and during the session of the Legislature the Senate thereof, while in session, on the 10th day of January, 1893, adopted the following resolution:

"Whereas, Harry B. Henderson was duly appointed and "commissioned on December 20th, 1892, by Amos W. Barber, "the then acting governor of the State of Wyoming, as State "examiner to fill the vacancy occasioned by the resignation "of Joel Ware Foster;

"Now, therefore, be it resolved by the senate, that the said "appointment of the said Harry B. Henderson to the office "of State examiner be and the same is hereby advised, con- "sented to and confirmed."

On February 1, 1893, during the same session of the Legislature, John E. Osborne, the governor of the State, transmitted to the Senate, which was then in session, his nomination of John Stone for the office of State examiner, and on February 18, 1893, the Senate adjourned sine die without having taken any final action on said nomination, without confirming the same and without either giving or refusing to give its advice and consent to the appointment of said Stone to the office. On March 8, 1893, after the adjournment of the Legislature, and during the interval between the regular sessions thereof (the next ensuing regular session being in 1895) Governor Osborne executed and delivered a commission to said John Stone, attempting to appoint him to the office of State examiner "vice Harry B. Henderson, term expired," to hold the office until the next meeting of the Legislature. This commission was not attested by the secretary of State, nor was the great seal of the State affixed thereto. Stone never qualified or attempted to qualify as State examiner, and never entered upon or attempted to discharge the duties of the office, but thereafter and on March 23, 1893, he resigned said office, or attempted to resign the same.

On August 22, 1893, and during the time intervening between the regular sessions of the Legislature, Governor Osborne executed and delivered to the relator, Warren Richard-

son, Senior, a commission, purporting to appoint the relator
to the office of State examiner "for the unexpired term of
Harry B. Henderson, whose said office of State examiner be-
came vacant on the 10th day of January, A. D. 1893." The
words quoted are recited in this commission, which contains
the further recital that said Richardson, the relator, was
appointed from the date of the commission; that is, "from
the 22nd day of August, A. D. 1893, until the next meeting
of the Legislature of the State of Wyoming." This commis-
sion was not attested by the secretary of State under the great
seal of the State. The Senate never gave its advice and con-
sent to the appointment of the relator as State examiner, and
no nomination of relator for said office was ever made by the
governor to the Senate, and no nomination or appointment
of the relator to said office was ever confirmed by the Senate.
Upon receipt of the commission the relator accepted the same
and has ever since been willing, and desires, to enter upon
the duties of the office of State examiner, but has never qual-
ified and has never given any bond as such officer.

The defendant, Henderson, has at all times refused and still
refuses to recognize any right of the relator to the office of
State examiner, and claims the right to hold said office and
excludes the relator from the rights, privileges and emolu-
ments thereof. There has been no session of the Legislature
of the State since the adjournment on February 18, 1893. The
term of office of Amos W. Barber, as acting governor expired
on the 2nd day of January, 1893, and the term of John E.
Osborne as governor commenced on said 2nd day of January,
1893, at which time he entered upon the discharge of his
duties as such governor, and has ever since that date been
the legally elected, qualified and acting governor of the State.

The foregoing statement is a sufficient review of the sub-
mitted facts for the determination of the questions involved.
Counsel for defendant insist that as the relator has never
qualified he is not entitled to the office, and has no standing
in this court, and is not entitled to any relief, and that, as
no reason or excuse is shown for the absence of the attestation
of the secretary of State and the great seal of the State from

the commission of the governor to relator, the commission is not fully executed and would not be a sufficient warrant or authority for the assumption of the office by the relator, even if he were otherwise legally entitled to the same. These questions we do not care to pass upon at this time, as it is manifest that if we should hold that these positions were well taken by the respondent, the greater questions of public interest involved in the case would be postponed. We prefer to decide the main questions involved—the right of Henderson, the respondent, to hold over beyond the next meeting of the Legislature ensuing after his appointment, and the authority of the governor to appoint his successor during the recess of the Senate.

Provision is made for the office of State examiner in section 14 of Article IV of the Constitution of this State:

"The Legislature shall provide for a State examiner, who "shall be appointed by the Governor and confirmed by the "Senate. His duty shall be to examine the accounts of State "treasurer, supreme court clerks, district court clerks, and all "county treasurers, and treasurers of such other public insti- "tutions as the law may require and (he) shall perform such "other duties as the Legislature may prescribe. He shall re- "port at least once a year, and oftener, if required, to such "officers as are designated by the Legislature. His compen- "sation shall be fixed by law."

This mandate to the Legislature was promptly obeyed by the enactment of a statute by the first State Legislature, en- titled "An Act providing for the office of State examiner, de- fining his powers and duties, prescribing his bond and fixing his compensation," approved January 10, 1891. (Ch. 84, Sess. Laws, 1890-91.)

The following sections of the act are quoted as applicable to the case at bar:

"Section 1. The office of State examiner is hereby cre- "ated.

"Sec. 2. Such examiner shall be appointed by the gov- "ernor by and with the consent of the Senate. He shall hold

"his office for four years and until his successor in office is
"appointed and shall have qualified."

"Sec. 6. In case of vacancy in the office of State examiner,
"by death, removal or otherwise, the governor shall fill the
"same by appointment until the next meeting of the Legis-
"lature. The appointee to fill such vacancy shall execute the
"same bond and take the same oath as herein described, and
"shall have the same powers and duties as a State examiner
"appointed by the governor by and with the advice and con-
"sent of the Senate."

Much space in the brief of counsel for the relator is de-
voted to the discussion of the rule of the common law as to
the right of an incumbent of an office to hold over beyond
his term and until the qualification of his successor. It at-
tacks the position, evidently taken in Throop on Public Offi-
cers, at section 325, that the common law rule, or the rule in
the absence of any constitutional or statutory provision, ac-
cording to the weight of American cases, is that public offi-
cers hold over until the choice and qualification of their suc-
cessors. The authorities cited in support of the proposition
are discussed at length, particularly the position taken in
People v. Oulton, 28 Cal., 44, which is condemned in the
brief of counsel for relator as against the current of authority.
At page 562 of Vol. 19, Am. & Eng. Enc. of Law, the matter
is treated of in the following language: "Although there is
"authority for the proposition that an officer's functions cease
"immediately upon the expiration of his term of office, the
"doctrine supported by the preponderance of opinion is, that
"in the absence of any express or implied prohibition an offi-
"cer holds over after the expiration of his term until a suc-
"cessor is duly chosen and qualified. To this general rule
"some of the authorities make an exception in the case of
"judicial officers and possibly also of members of the Legis-
"lature and the executive. In most of the States, all doubt
"is removed by constitutional or statutory provisions, that,
"when an officer is elected or appointed for a fixed term, the
"office shall not, on the expiration of the term, become vacant,
"but the incumbent shall continue to hold until his successor

"is elected and qualified. In these jurisdictions, consequently, "the governor cannot, on the expiration of a term of office, "appoint a new officer, but the former incumbent is entitled "to hold over until a duly qualified successor presents himself."

The Supreme Court of the United States seems to be of a contrary opinion, as it says in the case of Badger v. Bolles, 93 U. S., 601: "By the common law, as well as by the statutes of the United States, and the laws of most of the States, when the term of office to which one is elected or appointed expires, his power to perform its duties ceases." It was held in that case that the constitution and laws of Illinois prescribed a different rule, or as it said in the opinion: "The system of "the State of Illinois seems to be organized upon a different "principle," and the court accordingly held that a certain township officer in Illinois continued in office and was not relieved from his duties and responsibilities as a member of the board of auditors of the township by his resignation, which had been tendered to and accepted by the proper authority, until his successor was chosen and qualified. Counsel for relator sums up his position in the case in his brief as follows: "There is nothing in the Wyoming Constitution or statutes "authorizing Henderson (the respondent) to hold over after "the expiration of his term, and until his successor is nomi-"nated by the governor and confirmed by the Senate. On the "authorities, there is no common law rule authorizing him to "do so."

It is unnecessary to ascertain or apply the common law rule in the case at bar, as our constitution regulates the matter generally in a sweeping provision embodied in Article 6, which counsel for relator seems to overlook. Section 16 of the article reads as follows:

"Every person holding any civil office under the State, or "any municipality therein shall, unless removed according to "law, exercise the duties of such office, until his successor is "qualified, but this shall not apply to members of the Legis-"lature, nor to members of any board of (or) assembly, two "or more of whom are elected at the same time. The Legis-"lature may by law provide for suspending any officer in his

"functions, pending impeachment or prosecution for miscon-"duct in office."

This provision of the fundamental law is applicable to appointive as well as elective officers. It applies to the respondent Henderson, as he undoubtedly held a "civil office under the State" and was not one of the excepted officers mentioned, a member of the Legislature or a member of any board or assembly, unless some other provision of equal dignity can be found that will modify the section quoted, or make it inapplicable to him.

It may be contended that upon the expiration of his term, to fill the vacancy resulting from the resignation of Foster, his predecessor in the office, that is, upon the meeting of the Legislature, which occurred some twenty days after his appointment, that his right to hold the office or fill the vacancy, expired by limitation of the statute, and then the governor had the right to appoint for the remainder of the unexpired term of Foster, the original incumbent, under the provision of section 7 of article 4 of the State constitution: "When any office from any cause becomes vacant, and no mode is provided by the constitution or law for filling such vacancy, the governor shall have power to fill the vacancy by appointment." The statute creating the office of State examiner, supra, makes no express provision as to how the vacancy, if it can be termed a vacancy, shall be filled after the Legislature meets, either by the governor or by the governor and the Senate acting concurrently by appointment and confirmation. It is also silent as to the term of the successor of the appointee of the governor to fill the vacancy in the recess of the Legislature.

Is this one of the cases where the governor may appoint to fill a vacancy in the office? Did the temporary and provisional appointment of Henderson, the respondent, continue only until the Legislature met, and did his right to the office terminate then, or was he continued in office by virtue of the constitutional provision providing that any person holding a civil office under the State, not being a member of the Legislature or a member of a board of assembly, two or more of whom are elected at the same time, shall exercise the

duties of such office until his successor has qualified? If the office of State examiner became vacant upon the expiration of the limited period of term of Henderson, the appointee to fill the vacancy temporarily, then he had no right to exercise the duties of the office, and in the absence of any constitutional or statutory provision for filling the vacancy thus occurring, the governor could appoint under the authority conferred upon him by section 7 of article 4 of the Constitution. The Legislature has the right to determine what shall constitute a vacancy, whether the office be filled by an incumbent or not. This is frequently done by statutes providing for special elections where an officer elect dies or refuses to qualify or resigns before the commencement of his official term; and some statutes may be found empowering some officer or board to fill the vacancy thus created by law. Johnson v. Mann, 77 Virginia, 265. Without some statutory regulation of the matter, a vacancy can only exist in an office where there is no lawful incumbent occupying it. An office cannot be said to be vacant while any person is authorized to act in it and does so act. People v. VanHorn, 18 Wendell, 518; Tappan v. Gray, 9 Paige, Ch. 507.

In the recent case of State v. Murphy (Florida), 13 Southern, 705, it was held that where county commissioners are appointed by the governor by and with the advice and consent of the Senate, and their term of office fixed at two years, and the governor recommended to the Senate certain persons as county commissioners, but the Senate adjourned sine die without taking action on these nominations, that the governor had the power to fill the offices by appointment, as vacancies existed then, notwithstanding a constitutional provision similar to ours, which was considered only to prevent an hiatus in the office, until the appointing power acted. The opinion seems to be based upon certain constitutional and statutory provisions, modifying or neutralizing a general provision of the constitution of Florida that "all State, county and municipal officers shall continue in office after the expiration of their official terms until their successors are duly qualified." This decision is certainly the most favorable one that can be

cited on behalf of the relator, but we are not satisfied with the reasoning of the majority opinion. Upon principle and reasoning, the dissenting opinion of Mr. Justice Mabry seems to be the better view and the one in consonance with the greater number of authorities. Under our constitution, the governor is not clothed with an absolute power of appointment of State officers. Nearly all of such officers are to be elected by the people, but some of them the constitution expressly requires to be appointed by the governor with the consent of the Senate, such as geologist, engineer, trustees of the university, and the State examiner. The Legislature may provide for such other State officers not enumerated in the constitution as are deemed necessary (Art. 4, Sec. 11), and it seems that in the creation of such officers the governor may be vested by law with the sole power of appointing them, dispensing with the consent of the Senate. Such, however, has not been the habit of the State or Territorial Legislatures, in creating new offices, as such officials are generally required by the statutes to be appointed by the governor by and with the advice and consent of the Senate, except only in cases of vacancies. The power lodged with the governor to fill vacancies in any office is restricted to cases where the constitution and statutes are silent as to the mode of filling them, and is not a plenary power. The executive is not vested with the sole appointing power except as to a few offices, and certainly he does not have any inherent power of appointment, as such power in the States of the Union is not essentially executive. The sovereign power is in the people, and not in their rulers. The power of the executive and judicial departments is a grant, not a limitation, while the powers of the legislative department are absolute, except as restricted and limited by the constitution which the people have adopted. State v. Boucher (N. D.), 56 N. W., 142. This is elementary, and too familiar to need elaboration, that while the judiciary and the executive have only enumerated powers, the sway of the legislative department is supreme, except as controlled by the limitations imposed by the organic law. The power of the governor to appoint to office must spring from some constitu-

35

tional grant or some legislative grant not forbidden by the constitution, and the power bestowed by the constitution upon the executive to fill vacancies in public offices is one only to be exercised where there is no constitutional or statutory provision for filling the vacancy. Although the act before us is silent as to filling the office after the expiration of the time allotted to the appointee to fill a vacancy in the office of State examiner, the constitution is not. He holds a civil office under the State, and continues to exercise its duties until his successor is qualified. This successor must be one appointed by warrant or authority of law, and not in the absence of it. There would be no sense in the position that a vacancy could be created by an attempt to fill a vacancy, nor in the view that one appointee to fill a vacancy could be succeeded by another to fill the same vacancy, where the provisional appointment is made from the same source. The vacancy is already filled by the governor's appointment, and there is no reason why the appointee should be displaced by one appointed by a succeeding governor. Such a succession in office is not contemplated by the constitution or by the statute. In the statute under consideration, it is plainly to be seen that the object in limiting the power of appointment to fill a vacancy in the office until the next meeting of the Legislature, was not intended to confer the power to fill it beyond that time upon the executive, but it was evidently intended that the successor to the provisional appointment should be selected by the original source of appointing power, the governor and the Senate acting concurrently and in harmony with each other. Construing the act reasonably, the purpose in limiting the tenure of office of the appointee to fill the vacancy until the assembling of the Legislature, was to have the office, not the vacancy, filled by the governor and the Senate. There is no provision for filling the office for the unexpired term of the original and regularly appointed incumbent, and in the absence of such a provision, the new appointment by the governor, with the assent of the Senate, it seems, would hold his office for the full term and not for

the unexpired term.    Throop on Public Officers, Sec. 320-1, and cases there cited.

The appointment of the relator by the governor, as disclosed by his commission, was "for the unexpired term of Harry B. Henderson, whose said office became vacant on the 10th day of January, 1893." This recital in the commission is of no weight in determining the question before us, but it illustrates the difficulties in the way of determining a vacancy in an office filled by an incumbent. If the office became vacant on the 10th day of January, 1893, the first day of the session of the second State Legislature, and the first day of the next meeting of the Legislature ensuing after the appointment of Henderson by acting governor Barber, the vacancy occurred for no other reason than the expiration of Henderson's term, and if his term expired on that day there was no portion of his unexpired term to fill.

There is no provision of our constitution and no provision of statute declaring when a vacancy occurs in any office, except in the general election law (Ch. 80, Sess. Laws 1890), which declares at section 45 when elective offices become vacant, "on the happening of either of the following events to the incumbent before the end of his term of office, namely: his death, his resignation, his becoming insane or non compos mentis, his ceasing to be an inhabitant of the territory (State), or, if the office is local, his ceasing to be an inhabitant of the district, town, ward or precinct for which he was elected; his conviction of an infamous crime or of any offense involving a violation of official oath, his removal from office, his refusal or neglect to take his oath of office or to give or renew his official bond, or to deposit or file such oath or bond within the time prescribed by law, and the decision of a competent tribunal declaring his election void." These provisions are confined to vacancies in elective offices, but even if we could enlarge their scope and include appointive offices, which is doubtful, there is nothing in them which would aid the relator here.   It seems that no provision is made for special elections to fill vacancies in elective offices except where there has been no choice at a general election of any officer, not a

precinct officer, or when the rights of a person elected to the office of member of the council (Senate) or member of the house of representatives, shall cease by death, or otherwise, before the commencement of, or during the term for which he shall have been elected. (Ch. 80, Sess. Laws 1890, Sec. 3.) As to vacancies occurring in other elective offices, by statute the board of county commissioners have power to appoint as to county and precinct offices, and the governor, as to State offices, either by force of some statute or under the provisions of section 7 of article 4 of the constitution. Our statutes are not only barren of any provision determining that a vacancy shall exist in a public office, when the term of office ends, but, we have an express constitutional provision applying to all civil offices under the State, and of any municipality therein, except members of the Legislature and certain boards or assemblies, continuing the incumbent of an office in the discharge of his duties until the qualification of his successor, and this provision must control any statutory provision.

The official may not evade the responsibilities thrust upon him by this constitutional provision, even by resignation. His successor must present himself duly qualified before the incumbent can release himself from the inexorable requirements of the constitution that he has sworn to support. Such cases may indeed be rare, but they may occur. The mandate of the constitution precludes an interregnum in the office, and was doubtless intended to prevent inconvenience in the public service, by keeping filled all the public offices for the despatch of the public business. The successor who is competent to relieve the incumbent must have the right to the office, and be the proper and legal successor of the incumbent. He must be elected or appointed at the proper time by the proper authority, either by the people themselves or by some one or more of their duly appointed and accredited agents, otherwise he cannot oust the incumbent. Under the Utah statutes, where an election was not held at the time prescribed by law for county collector, an election at another time was held invalid, and the incumbent was held entitled to hold over until the election or appointment and qualification of

his successor, and Paine on Elections, Sec. 227, was quoted with approval in the opinion, "that if there was a vacancy in any just sense, after the expiration of the term, and before the election and qualification of a successor, the statute itself fills the vacancy by providing that the incumbent shall hold until the election and qualification of a successor, and that a failure to elect a successor to an office at the expiration of its term does not create a vacancy to be filled by appointment. * * * The incumbent holds over for an indefinite period, if no successor is elected and qualified." People v. Hardy, 29 Pac., 1118. In People v. Lord, 9 Mich., 227, the incumbent of the office of probate judge died after his re-election and before his qualification. Under the provisions of the constitution of Michigan, the governor is to appoint a person to fill the vacancy in that office to continue until a successor is elected and qualified, who is to hold his office for the unexpired term. The governor appointed one to fill the vacancy for the old term and at the expiration of such term, appointed another to fill the vacancy for the new term. The court held the first appointment valid, and that it continued until the vacancy was filled by a special election called pursuant to law, and that the second appointment for the vacancy occurring in the new term was invalid, as prohibited by the constitution, the first appointee evidently holding until a successor was elected and qualified. The rule in this case was followed in a later Michigan case, Lawrence v. Hanley, 47 N. W., 753, where a county auditor elect died before he had qualified and entered upon the duties of his office, and the governor appointed one to fill the vacancy. It was held as to this office, that the governor had no power to appoint, and that the incumbent held over until his successor was elected at a special election provided by law. In Indiana, one elected a township trustee at the regular election for township officers, died before the vote was announced. An attempt was made to elect his successor at a succeeding general election, without authority of law to do so, and also to appoint a successor by the county board. The election and appointment were held void, as there was no authority of law for either, and the incumbent of the office was

continued in office, there being no vacancy until the qualification of a successor elected by the same electoral body or constituency which elected the incumbent, at a time authorized by law. Kimberlin v. State, 29 N. E., 772. In State v. Harrison, 113 Ind., 434, a president of the several boards of trustees of the benevolent institutions of the State was elected by the Legislature for a term of four years. The act provided that if a vacancy should occur in the office, when the Legislature was not in session, the governor should appoint, the appointment to hold good until the next session. The term of the officer first elected expired during the session of a Legislature held four years after his election, but that body adjourned without electing a successor to the incumbent. The governor being of the opinion that the failure of the Legislature to elect a successor "produced a vacancy" in the office, appointed another to fill the office. In a contest for the position by the incumbent and the governor's appointee, the court held that the incumbent held over, under the provisions of the Indiana constitution, and that there was no vacancy as the incumbent held his office by virtue of the constitutional provision continuing him in office until his successor should be elected and qualified. In this case, it was held that the constitutional provision applied as well to officers elected by the Legislature as to those chosen by the people. It was further said in the opinion that: "The word 'vacancy' as applied to an office, has no technical meaning. An office is not vacant so long as it is supplied in the manner provided by the constitution or law with an incumbent who is legally qualified to exercise the powers and perform the duties which pertain to it; and, conversely, it is vacant in the eye of the law whenever it is unoccupied by a legally qualified incumbent who has a lawful right to continue therein until the happening of some future event." The cases cited are: Stocking v. State, 7 Ind., 326; Collins v. State, 8 Ind., 344; Akers v. State, 8 Id., 484; State v. Bemenderfer, 96 Id., 374; Gosman v. State, 106 Id., 203; Butler v. State, 20 Id., 169; People v. Tilton, 37 Cal., 614; Commonwealth v. Hanley, 9 Pa. St., 513; Johnston v. Wilson, 2 N. H., 202. The court further say: "Of course, it is not

to be understood that an office cannot become vacant, as respects the appointing power, so long as it remains in the actual physical occupancy of some one who asserts a claim thereto. An office is legally vacant unless the occupant has an unexpired right of title, founded in the constitution or law, precisely as a house is vacant of a lawful tenant in case the lessee, without any provision authorizing him to hold over, refuses to surrender at the expiration of his term."

The California cases are much in point. Although the earlier decisions held to the contrary, the law of that State is now settled by repeated decisions, that the incumbent holds over until his successor is appointed and qualified in the mode provided by law, and that the expiration of his term does not in itself create a vacancy. People v. Tyrell, 87 Cal., 475, approving People v. Tilton, 37 Cal., 614; People v. Bissell, 49 Cal., 407. Some of the cases in that State are based upon a provision of the Political Code which declares that "Every officer must continue to discharge the duties of his office, although his term has expired, until his successor has qualified."

In the case of People v. Bissell, supra, the court held that an incumbent of the office held until his successor in the office, inspector of gas meters, was appointed by the governor and confirmed by the Senate, and that Parkinson, appointed by the governor alone, without the assent of the Senate, was not his successor. Wallace, C. J., says in his opinion: "So long as Bissell, therefore, continues to discharge the duties of his office pursuant to the requirements of section 879 of the code, even though his term of office has expired, there is no vacancy in the office, in the absolute sense, nor in any sense which would authorize the governor to fill it without consent of the Senate first had. Such a vacancy would only be caused by the resignation or death of the incumbent, or some other event by which the duties of the office were no longer discharged at all, in which case, and in order to prevent a failure of public service, the governor might appoint during a recess of the Senate." Rhodes J., concurring, said that by virtue of the section of the code the incumbent would continue to dis-

charge the duties of his office until his successor was qualified and that: "It results from this that there was no vacancy in the office which the governor was authorized to fill by appointment."

In the case of People v. Tilton, 37. Cal., at page 624, the court say, after reviewing at length the California cases: "The law, therefore, provides in express terms for filling the office by the old incumbent from the date of the expiration of the term until a successor is elected and qualified in the mode provided by law." And again: "But till a successor is elected, the office is temporarily filled by the party designated by the law, and there is no vacancy within the meaning of the constitution and no occasion for calling into exercise the extraordinary power of the governor, which was only given by the constitution in order that the public interest might not suffer for want of a party authorized to discharge the duties pertaining to a public office. If a vacancy occurs, then, by the lapse of the term, the law provides how it shall be filled till a successor is elected and qualified, and that is by the old incumbent, and not by an appointment by the governor."

Other cases lay down the same doctrine. They have gone over the same ground and it is not necessary to review them. Among them are Smoot v. Somerville, 59 Md., 84; State v. Rareshide, 32 La. Ann., 934; Brady v. Howe, 50 Miss., 607; State v. Fagan, 42 Conn., 32; Stilsing v. Davis, 45 N. J. L., 390; State v. Bryson, 44 Ohio St., 457; State v. Howe, 25 Id., 588; Borton v. Buck, 8 Kansas, 207; People v. Osborne, 6 Colo., 605, and the recent and well considered case of State v. Boucher (North Dakota), 56 N. W., 142.

The case of State v. Lusk, 18 Missouri, 333, has been much cited, even since it was overruled by the more recent cases of State v. Seay, 64 Mo., 89, and State v. Thomas, 102 Mo., 85. In State v. Seay, the statute regulated the matter of the vacancy by providing for the qualification of an officer elect before the commencement of his term. The officer elect died two days before his term began, but after he had qualified, and it was decided that this created a vacancy which the governor might fill by appointment. The decision was based

upon the peculiar provision of the Missouri statute, and upon the fact that upon the expiration of the incumbent's term his successor had been elected and qualified.

In State v. Thomas, it is said in the course of the opinion: "The fact that the incumbent remains clothed with official authority, in furtherance of a wise provision of public policy and of public law, cannot enlarge the boundaries of his official term, or arrest the operation of the power of appointment or of election. Of course, these remarks are subject to the conditions that the law has provided for filling the office in one of the modes mentioned, and that, therefore, the election or appointment cannot be classed as voluntary."

A careful reading of the numerous decisions of the American courts on the question is convincing that the doctrine is too well intrenched to be dislodged at this time, that where a constitutional or statutory provision exists permitting or commanding an incumbent of an office to continue in the discharge of his duties until his successor is qualified, it must be construed as controlling, and the expiration of the official term, cannot be deemed a vacancy, unless there is some legal successor appointed or elected by some competent authority to take the place of the incumbent. His holding over may be a mere prolongation of the term (Carr v. Wilson, 32 W. Va., 419, 9 S. E., 31), or be considered a contingent extension (People v. Whitman, 10 Cal., 38), or as adding an additional contingent and defeasible term to the original fixed term (State v. Harrison, 113 Ind., 441). It excludes the possibility of a vacancy, and, consequently, the power of appointment, except in case of death, resignation, ineligibility or the like. Gosman v. State, 106 Ind., 203, and cases cited.

Frequent reference is had to the case of Johnston v. Wilson, 2 N. H., 202, by courts entertaining opposite views. The usual quotation from the opinion is the following language: "It must be obvious, also, that when once accepted, no vacancy can be said to exist in the office till the term of service expires or till the death, removal or resignation of the person appointed." No one can seriously question the correctness of this statement, but it seems it has been warped in many in-

stances from its true meaning. Of course, no vacancy can occur in an office filled by an incumbent, "till the term of service expire," but the question that has been a prolific source of inquiry is, whether or not a vacancy exists after the term of service expires. It may not be amiss to see what the decision was in this leading case. Johnston was appointed collector at the annual March meeting of the town of Hillsborough, and signified his acceptance of the office, but did not take the oath of office. Nothing further was done upon the subject until the ensuing month of May, when the tax list of the town was presented to Johnston for collection. He declined receiving it unless the selectmen would furnish him an indemnity bond for the non-resident taxes, it then being so late as to endanger the legal recovery of them. This indemnity was refused, and the selectmen, under the impression that the conduct of Johnston amounted either to a resignation or non-acceptance of the office, proceeded to appoint another collector, who was Wilson, one of their own number. The oath was administered to him, and he commenced the collection of taxes. As some doubts arose concerning the legality of Wilson's appointment, the town at a meeting in November of the same year called for other purposes, passed a vote to ratify the doings of the selectmen in respect to Wilson's appointment. No new warrant was given to him, and no new oath was administered. He seized and sold thereafter certain property of Johnston, as a distress for the payment of his taxes for the year. The court held that under the statute the selectmen could only fill a vacancy where the town had neglected or refused to choose a collector, and such collector could only collect the county and State taxes, not the town taxes. The town had not neglected to fill the office. It was also held that the appointment of the selectmen, as it was void, could not be ratified by the town at the November meeting, because the meeting was called for a different purpose and the town was not legally "warned," in the quaint language of the law, and further, that Wilson had never taken the oath after this November meeting. At the close of the opinion, however, it seems to be clearly intimated that the old incumbent of the office of col-

lector would hold over, as Johnston had not been sworn, and as Wilson had not been legally appointed and sworn. The court say: "It is, therefore, manifest that those town officers, once chosen and sworn, are the only ones qualified to perform official duties, until new ones are sworn, as well as 'chosen in their room.' The town is thus never destitute of officers duly qualified; and it cannot be reasonable or necessary, that while the offices are already filled by persons duly qualified others not duly qualified should be enabled to perform the duties of them."

In the case of In re Board of Commissioners of Johnson County, 32 Pac., 854, this court held that "an old office is vacated by death, resignation or removal. An office newly created becomes ipso facto vacant in its creation." In that case the statute creating the office of judge of the fourth judicial district, provided for a temporary appointment by the governor to fill the office. The syllabus to the case, which was not prepared by the court, is misleading. The statute conferred in express terms the authority upon the governor to fill the office provisionally by appointment, and as the Legislature is untrammeled as to that office in this respect by any constitutional provision, the power conferred upon the governor was by the act itself, which was held constitutional, and not by the terms of the constitutional provision, requiring the governor to fill a vacancy in a public office where no mode is provided by the constitution or the law for filling the same.

The vacancy in an office, which may be filled by the governor, under the constitution, arises in cases of emergency, where there is no person in an office of lawful capacity to act therein, such an occasion as resignation, disqualification, death or the like; and where there is no provision either in the constitution or in any statute for filling the same. It would seem to apply where there was no officer in the position, or it may be, where he is disqualified to act and does not act, and there is no method pointed out by law to fill the place. It has no reference to the case of an incumbent in an office, whose term, however limited, has expired, and who is await-

ing his successor, for his right to the office has not terminated and can not terminate under the constitution until his successor appears, endowed with the necessary qualifications that shall entitle him to it, chief among which must be his appointment by competent authority at the proper time. Until that event happens, the office is filled by an incumbent who exercises the duties of the office under constitutional authority and there is no vacancy.

It appears that the Senate did not act upon the nomination of Stone by Governor Osborne, possibly because it desired to have Henderson continue in the office. This is shown by the action of the Senate confirming him. This was ineffectual, as the appointment of Acting Governor Barber was not made to the Senate, but until the Legislature met. At that time, a new appointment was necessary and proper, as is conceded, but such appointment could then have been made only by Governor Osborne, by and with the advice of the Senate.

Our conclusions are that the respondent is lawfully and constitutionally authorized to discharge the duties of the office of State examiner, and that there has been no vacancy in the office which the governor could fill by his appointment, without the consent of the Senate.

The finding and judgment will be for the defendant.

CONAWAY and CLARK, JJ., concur.