## Kratzer v. Commonwealth.

(Decided March 22, 1929.)

W. B. WHITE for appellant.

J. W. CAMMACK, Attorney General, GEO. H. MITCHELL, Assistant Attorney General, W. C. HAMILTON, Commonwealth's Attorney, and H. W. SULLIVAN, County Attorney, for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

Lawrence Kratzer has prayed an appeal from a judgment convicting him of the illegal possession of intoxicating liquor, and fixing his punishment at a fine of $100 and 30 days' imprisonment.

Acting under a search warrant, the officers went to Kratzer's grocery, in Mt. Sterling. Behind the counter, and between it and the refrigerator, they found a trap-door that fitted into the floor. Beneath the floor was a basement. In this basement they found a jar containing a half gallon of moonshine whisky. Behind the counter they also found several jars, some of which emitted the odor of intoxicating liquor. When it was suggested that some one look down in the basement, to see what else was there, Kratzer remarked that there was no use to look further, as that was all he had. According to Kratzer, he knew of the place under the floor, but used it only for the purpose of disposing of water that came from the refrigerator. However, he had not been using it for a month prior to the search. He did not put the whisky in the hole, nor did he know it was there. Never at any time had he had any whisky in his store, since he had been there. His brother, Luther Kratzer, who had formerly worked at the grocery, testified that he was there shortly before the search, and placed a half gallon of moonshine under the floor. At that time Walter Rankins was there, eating some cheese and crackers. Lawrence Kratzer was not there, and did not know that the liquor had been placed under the floor. Luther Kratzer is corroborated by Walter Rankins, who says that he was present and saw him place the liquor under the floor. However, Leslie Campbell, the clerk, was there. Leslie Campbell testified that Luther Kratzer and Walter Rankins were in the store on the occasion referred to, and he saw them near the refrigerator. He was waiting on customers at the time, and never paid any attention to them. The accused also proved a good reputation.

The principal ground urged for reversal is that the court erred in not excluding all the evidence offered by the commonwealth, on the ground that the search was illegal. The basis of this contention is that the affidavit in support of the search warrant was made before one not authorized to administer an oath. The record discloses that the affidavit was made before W. C. Hamil-

ton, examiner from Montgomery county, Kentucky. Hamilton was appointed examiner in the year 1902, and since that time he had not been reappointed or removed. His power to act is assailed on the ground that his appointment was not good for a longer period than four years. Bearing on this question are the following provisions of the Constitution:

> "The General Assembly shall not grant any title of nobility or hereditary distinction, nor create any office, the appointment of which shall be for a longer time than a term of years." Section 23.
>
> "Inferior state officers, not specifically provided for in this constitution, may be appointed or elected, in such a manner as may be prescribed by law, for a term not exceeding four years, and until their successors are appointed or elected and qualified." Section 93.
>
> "The General Assembly may provide for the election or appointment, for a term not exceeding four years, of such other county or district ministerial and executive officers as may, from time to time, be necessary." Section 107.

It is true that in the case of Cincinnati, N. O. & T. P. R. Co. v. Cundiff, 166 Ky. 594, 179 S. W. 615, Ann. Cas. 1915C, 513, we held that, under the foregoing provisions of the Constitution, the appointment of a railway policeman pursuant to sections 779a1-779a8, Kentucky Statutes, to hold office at the pleasure of the railway, was good for four years, and no longer; but in that case the court failed to give effect to the true meaning of the words "term of office." As applied to office the word "term" speaks with reference to the office itself, and not to the tenure of the incumbent. Barrett v. Duff, 114 Kan. 220, 217 P. 918. It means the fixed period of time during which an officer or appointee is entitled to hold the office, perform its functions, enjoy its privileges and emoluments (State v. Knight, 76 Mont. 71, 245 P. 267), and does not apply to appointive offices held at the pleasure of the appointing power (City of Lexington v. Rennick, 105 Ky. 779, 49 S. W. 787, 50 S. W. 1106, 20 Ky. Law Rep. 1609, 1924; Speed v. Crawford, 3 Metc. 207; Bayley v. Garrison, 190 Cal. 690, 214 P. 871; State v. Oklahoma City, 38 Okl. 349, 134 P. 58; Wilson v. McCarron, 112 Me. 181, 91 A. 839; Stone v. State, 18 Ala. App. 228, 89 So. 824).

Here the officer is removable at the pleasure of the court. Though, unless sooner removed, he may hold longer than four years, there is no fixed time during which he may claim the office as a matter of right, and therefore no term for a longer period than four years.

We are therefore constrained to the view that an appointment of an examiner, to hold office at the pleasure of the court, does not offend the foregoing provisions of the Constitution, and that his right to the office continues until he is removed, and does not end at the expiration of four years from the time of his appointment. To the extent that Cincinnati, N. O. & T. P. R. Co. v. Cundiff, supra, announces a contrary doctrine, it is hereby overruled. It follows that Hamilton had the power to administer the oath, and, the affidavit being sufficient in other respects, it also follows that the search was legal, and that the evidence thereby obtained was admissible.

But it is argued that Kratzer was entitled to a peremptory instruction. The basis of this contention is that, though the finding of the whisky on his premises was prima facie evidence of guilt, and placed on Kratzer the burden of showing that the whisky was there without his knowledge or consent, the burden was fully met by him and his witnesses. It must not be overlooked that not only the whisky was found on appellant's premises, but there was evidence that when the whisky was discovered, and it was suggested by the officers that they search further, Kratzer said that there "wasn't any more." As the credibility of witnesses is for the jury, we are not at liberty to say that they should have disregarded the physical facts surrounding the transaction, together with Kratzer's statements, and have believed Kratzer and his witnesses. On the contrary, we are forced to conclude that the evidence made a question for the jury.

Ordinarily, in prosecutions for the illegal possession of intoxicating liquor, the defense is merely a denial of possession, and it is not necessary to tell the jury what constitutes possession. However, in cases where the jury, without further direction, might be confused as to what constituted possession, it is prejudicial error not to instruct on the subject. This rule is peculiarly applicable to a case where the liquor is found on the premises of the accused, and he defends on the ground that it was there without his authority, knowledge, or consent. Keifner v. Commonwealth, 225 Ky. 163, 7 S. W. (2d) 1066; Wil-

liams v. Commonwealth, 204 Ky. 538, 264 S. W. 1080; Addington v. Commonwealth, 200 Ky. 290, 254 S. W. 889. In the circumstances here presented we are constrained to the view that Kratzer was entitled to an instruction telling the jury in substance that, if the whisky was on his premises without his authority, knowledge, or consent, he was not in the unlawful possession of the whisky, and should be acquitted.

Wherefore the appeal is granted, and the judgment is reversed and cause remanded, for a new trial consistent with this opinion. Whole court sitting.