### Gossett v. Commonwealth.

(Decided Feb. 7, 1936.)

R. C. TARTAR and L. S. HAIL for appellant.

BEVERLY M. VINCENT, Attorney General, and GUY H. HERD-- MAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE CLAY— Reversing.

Buck Gossett has appealed from a judgment con-- victing him of the illegal possession of intoxicating liquor.

The main ground urged for a reversal is that the evidence was insufficient to take the case to the jury.

According to the evidence of the commonwealth,. J. B. Jasper, chief of police of the city of Somerset, gave Ed Bell $1 and arranged with him to go to the storehouse of Buck Gossett and purchase liquor. Accompanied by Jasper and George Bugg, a policeman, Bell went to a point about 100 yards from Gossett's store. There Jasper and Bugg stationed themselves,. and Bell went on to the store. In three or four minutes he returned with a bottle of liquor to the place where Jasper and Bugg awaited him. Bell says that while in the store he purchased a quart of red liquor and paid 50 cents a pint for it. He got the liquor from a "chuffy looking fellow." When he entered the store, Buck Gossett was not there, but a boy by the name of Loveless was there besides "the chuffy looking fellow." He did not know then, and does not know now, the man he bought the liquor from. He also testified as follows:

"Q. Who was this man you bought the liquor from? A. I don't know.

"Q. Where did he get the liquor he sold you? A. I don't know.

"Q. Did he have it on him somewhere? A. I don't know.

"Q. You don't know where he got it from. A. No, sir.

"Q. Mr. Bell, what kind of a store is this that. Buck Gossett has? A. Just a grocery store, I think.

"Q. Are there counters at the side of the door? A. I think theys counters at the side of the door.

"Q. There is a counter just as you go in the door, isn't that right? A. Yes, I think they is.

"Q. Did this man that you claim to have bought the whiskey from get that whiskey from behind the counter? A. I was standing there talking to this Loveless boy, and he handed me the whiskey, I don't know where he got it, I wasn't paying no attention to where he got it, and I don't know. * * *

"Q. Mr. Bell, you went over to Mr. Gossett's store, and told this man who was in the store that you wanted to buy some liquor? A. Yes sir.

"Q. And he gave you the liquor? A. Yes sir.

"Q. How long was it from the time you told him you wanted the liquor until he gave it to you? A. It was just right now.

"Q. You told him you wanted the liquor, and he immediately handed it to you? A. Yes sir.

"Q. Did he leave you and go anywhere to get it? A. Well, I never paid no attention, I was talking to this other boy.

"Q. Did he go anywhere after it? A. No, sir. * * *

"Q. Do you know whether or not he went behind the counter and got it? A. No. I don't know; he just sort of stepped off and give it to me; I was talking to the other boy and never paid no attention to where he got it.

"Q. You don't know but what he got it out of his pocket, do you? A. No, I don't."

It is ably argued on behalf of the commonwealth that no merchant deserts his store or leaves it in charge of a stranger and the proven facts are such as to lead any reasonable person to believe that the man who sold the whisky to Bell was the clerk or representative of Gossett, and that the liquor was on the premises and in his possession at the time. In this connection stress is placed upon the evidence that the sales-

man "stepped off and give it to me." All this may be admitted, but it falls short of showing either that the salesman was an employee of Gossett's or that the liquor was ever in Gossett's possession. Neither Gosett nor his wife was in the store at the time the alleged sale was made. It was not shown that the "chuffy looking fellow" was known to anybody in the community or that he was ever seen in the store or elsewhere prior to or subsequent to the alleged sale. Nor does Bell's expression "he just sort of stepped off and give it to me," when considered in connection with the other evidence, add much to the case. According to Bell, the liquor was immediately handed to him, and he did not see the salesman go anywhere after it, did not know where he got it, and did not know but what he got it out of his own pocket. Even if the evidence were sufficient to justify the inference that the salesman picked the liquor up from some place in the store, there was nothing in the evidence to show that the whisky did not belong to him or that he did not place it there. It follows that the motion for a peremptory should have been sustained.

As there may be additional evidence on another trial, it becomes necessary to consider the contention that the court erred in not telling the jury what constitutes "possession." Ordinarily, such an instruction is not necessary, but where, as here, the accused claims that he knew nothing whatever of any liquor being on his premises, he is entitled to an instruction telling the jury in substance that, if the liquor was on his premises without his authority, knowledge, or consent, he was not in the unlawful possession of the liquor and should be acquitted. Kratzer v. Commonwealth, 228 Ky. 684, 15 S. W. (2d) 473.

Wherefore the appeal is granted, and the judgment reversed and cause remanded for a new trial not inconsistent with this opinion.